## S91G1446. MAYS v. THE STATE.
### (414 SE2d 481)

FLETCHER, Justice.

In June of 1989, appellant was arrested on a charge of possession of cocaine with intent to distribute. On December 4, 1989, appellant pled guilty to the June 1989 offense ("June offense") and, under Article 3, Chapter 8, of Title 42, Probation of First Offenders ("first offender article"), was sentenced, in part, to five years on probation. On December 8, 1989, appellant was arrested on another charge of possession of cocaine with intent to distribute. On April 10, 1990, a jury found him guilty of the December 1989 offense ("December offense"). The trial court then revoked his probation for the June offense, sentenced him to 30 years in prison for the December offense and, pursuant to OCGA § 16-13-30 (d), sentenced him to life imprisonment for the June offense. The Court of Appeals affirmed the trial court in *Mays v. State,* 200 Ga. App. 457 (408 SE2d 714) (1991). We granted a writ of certiorari to the Court of Appeals to consider Divisions 2 and 3 of its opinion and, for the reasons set forth below, we reverse.

1. OCGA § 16-13-30 (d) provides as follows:

Except as otherwise provided, any person who violates subsection (b) of this Code section [manufacture, deliver, distribute, dispense, administer, sell or possess with intent to distribute] with respect to a controlled substance in Schedule I or a narcotic drug in Schedule II shall be guilty of a felony

and, upon conviction thereof, shall be punished by imprison-
ment for not less than five years nor more than 30 years.
*Upon conviction of a second or subsequent offense, he shall
be imprisoned for life.*

(Emphasis supplied.) In Division 2 of its opinion in *Mays*, supra, the
Court of Appeals held that such language meant

that a person who has been convicted of and sentenced for
violation of an offense set forth in OCGA § 16-13-30 (b) *must*
receive a sentence of life imprisonment upon [the] second or
subsequent *conviction* of an offense under subsection (b).

(Emphasis supplied.) *Mays*, supra at 459. This language raises two
separate issues which must be addressed.

(a) The first issue raised by such language is the implication that
the enhanced punishment called for by OCGA § 16-13-30 (d) is appli-
cable where the accused has already been convicted of an offense
under that statute regardless of whether the offense for which the ac-
cused was previously convicted occurred before or after the offense
for which the accused is presently being tried. That implication is in-
correct.

The rationale for statutes imposing enhanced punishment is that
the repetition of the unlawful conduct aggravates the guilt of the ac-
cused by "[demonstrating] the incorrigible and dangerous character
of the accused, thereby establishing the necessity for an enhanced re-
straint." *Tribble v. State*, 168 Ga. 699, 700 (148 SE 593) (1929). Thus,
it is not the date of the conviction which determines the applicability
of enhanced punishment but the date of the commission of the of-
fense.

(b) The second issue the language employed by the Court of Ap-
peals in Division 2 of its opinion in *Mays v. State*, supra, raises is the
implication that the language of subsection (d) provides for man-
datory enhanced punishment upon conviction of a second or subse-
quent offense under that subsection. However, it cannot be forgotten
that statutes imposing recidivist or enhanced punishment must be
read in conjunction with OCGA § 17-10-2.

OCGA § 17-10-2 (a) provides, in part, that after the jury has re-
turned a verdict of guilty, the trial court shall determine the sentence
to be imposed and, in so doing, shall hear:

additional evidence in extenuation, mitigation, and aggrava-
tion of punishment, including the record of any prior crimi-
nal convictions and pleas of guilty or nolo contendere of the
defendant, or the absence of any prior conviction and pleas,
*provided that only such evidence in aggravation as the state*

*has made known to the defendant prior to his trial shall be admissible.*

As this court recognized in *State v. Hendrixson*, 251 Ga. 853, 854-855 (310 SE2d 526) (1984), OCGA § 17-10-2 (a) prohibits a trial court from considering anything in aggravation that the state has not informed the defendant, prior to trial, it will offer as evidence in aggravation of punishment during the sentencing phase of trial. See also *State v. Marshall*, 195 Ga. App. 535, 536 (394 SE2d 379) (1990). Thus, if the state has not specifically informed the defendant, prior to trial, that it intends to seek enhanced punishment based upon a conviction for a prior offense, the trial court would not be able to impose an enhanced sentence, even if the offense for which the defendant is being tried is a "second or subsequent offense."

(c) The fact that the present situation involves a plea of guilty under the first offender article does not alter the application of either of these rules. The June offense was the first offense in time and a life sentence could never have been imposed for that offense even though, at the time a conviction was entered on that offense, appellant had committed and been convicted of an intervening offense. The life sentence for the June offense which was entered by the trial court, and approved in Division 3 of the Court of Appeals' opinion, must be vacated.

2. For the benefit of the trial court at the resentencing for the June offense, we note that, for the reasons that follow, the sentence imposed may not exceed five years less the time appellant has already served.

(a) As to the sentencing of persons who plead guilty to an offense under the first offender article, OCGA § 42-8-61 provides: "The defendant shall be informed of the terms of this article at the time of imposition of sentence."[1]

One particular term of the first offender article of which the defendant must be informed is that, if the defendant violates his probation, the trial court "may enter an adjudication of guilt and proceed *as otherwise provided by law*." (Emphasis supplied.) OCGA § 42-8-60 (b).

We have held that the language "as otherwise provided by law" means that after an adjudication of guilt is entered pursuant to OCGA § 42-8-60 (b), the court may even impose a sentence greater

---

[1] Uniform Superior Court Rule 33.8 (C) (2) also provides that a trial court should not accept a defendant's plea of guilty to an offense until the trial court has, among other things, informed the defendant, on the record, of:

the maximum possible sentence on the charge, including that possible from consecutive sentences and enhanced sentences where provided by law[.]

than the one it originally imposed under the first offender article.[2] *Stephens v. State*, 245 Ga. 835, 836 (268 SE2d 330) (1980). However, in order to be able to impose a greater sentence, the defendant must have been informed, either by the sentencing document or by the trial court at the time the plea was entered, that such a sentence could be imposed upon revocation of the first offender probation. Accord *Griffin v. State*, 163 Ga. App. 871 (3) (295 SE2d 863) (1982).

(b) (1) Our review of the record reveals that, in the December 4, 1990 hearing on his plea of guilty to the June offense, the trial court informed appellant as follows:

> Do you understand the maximum penalty for [the offense of possession with intent to distribute cocaine] in this state is 30 years in the penitentiary, *but if you plead guilty to it you're going to be sentenced to five years on probation, that's a minimum,* and subject to 60 to 120 days at the Western Detention Center beginning January the 2nd, 1990. . . . *You understand on this First Offender, if you have any trouble with the law between now and the time you go to the Western Detention Center, in particular, you're going to be back before the Court and it's going to be a pretty severe penalty.*

(Emphasis supplied.)

(2) The order of probation on the June offense which was filed on December 5, 1989, stated that appellant pled guilty not to possession with intent to distribute cocaine but to the lesser included offense of possession of cocaine. That order also provided that, should appellant's probation be revoked, the court:

> may adjudge the defendant guilty of the above offense and a greater or lesser sentence may be imposed provided that credit be given for time served on probation.

(3) Not until April 27, 1990, almost three weeks after appellant had been found guilty of the December offense, his probation on the June offense had been revoked, and he had been sentenced on both offenses, did the state file a motion "for correction of error in sentence" concerning the December 5, 1989 probation order on the June offense. On May 25, 1990, presumably pursuant to OCGA § 15-1-3, the trial court entered a nunc pro tunc probation order, as to the

---

[2] The revocation of a term of probation under the first offender article differs from the revocation of a term of probation imposed under the State-wide Probation Act created by Article 2, Chapter 8 of Title 42.

June offense, which stated that, rather than having pled guilty to possession of cocaine, appellant actually pled guilty to possession of cocaine with intent to distribute. The nunc pro tunc order was to be effective December 4, 1989 and, as to revocation of the probation, provided:

> If such probation is revoked, the Court may order the execution of the sentence which was originally imposed or any portion thereof in the manner provided by law after deducting therefrom the amount of time the defendant has served on probation.

(c) "If there is any doubt as to the effect of a criminal sentence the defendant will be given the benefit of such doubt." *Stephens*, 245 Ga. at 837-838. This case is a classic example of one error being compounded by the next; however, the state, rather than defendant, must suffer the consequences of its own errors.

(1) When appellant pled guilty to the June offense under the first offender article, the trial court told appellant he would face "a pretty severe penalty" if he pled guilty under that article and then had his first offender probation revoked. The trial court did not inform appellant that "pretty severe" meant imprisonment for longer than the five years he had been sentenced to on probation and could even mean imprisonment for the 30-year maximum term for the offense of possession of cocaine with intent to distribute.

(2) The original probation order of December 5, 1989 would have informed appellant that, upon revocation of his probation, he could receive a sentence in excess of what he was sentenced to on probation. However, that order addressed the crime of possession of cocaine rather than possession of cocaine with intent to distribute.[3]

(3) Finally, even if appellant had known of the nunc pro tunc probation order, entered nearly two months after he had been adjudicated guilty of and sentenced for both the June and December offenses, it would have informed him only that if his first offender probation as to the June offense were revoked, he could be sentenced to serve five years imprisonment, less any time he had already spent on probation.

*Judgment reversed as to Divisions 2 and 3. All the Justices concur.*

---

[3] The record reflects that appellant neither signed nor was served with the December 5 probation order.

DECIDED MARCH 20, 1992.

*Henry G. Smith, Jr.*, for appellant.
*Willis B. Sparks III*, District Attorney, *Thomas J. Matthews*, Assistant District Attorney, for appellee.